**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WILLIAM MCNEILL and LISA MCNEILL

Plaintiffs/Counter-Defendants,

vs. No. CIV 24-0032 JB/SCY

WILLIE LOEWEN and EVA LOEWEN

Defendants/Counter-Plaintiffs.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion to Alter or Amend the Final Judgment, filed July 13, 2026 (Doc. 123)("McNeill Motion to Amend"); and (ii) the Defendants' Motion to Amend Judgment Entered on June 15, 2026 [Doc. 122 (Final Judgment)] [Doc. 121 (Opinion)], filed July 13, 2026 (Doc. 124)("Loewen Motion to Amend"). The primary issues are: (i) whether the Court should amend the Final Judgment to enter judgment for the Plaintiffs/Counter-Defendants, the McNeills, on liability for years one and two of the grazing rights, because the Court's Bench Trial Memorandum Opinion and Order, filed June 1, 2026 (Doc. 121)("Bench Trial MOO"), incorrectly finds that the Defendants/Counter-Plaintiffs, the Loewens, gave or granted the McNeills the right to lease/graze in years one and two; and (ii) whether the Court should amend the Final Judgment, because the damages awarded to the McNeills for the third year's grazing rights were either not properly awarded, or not properly calculated, and the McNeills fail to mitigate their damages. The Court concludes: (i) the Court does not amend the Final Judgment to enter judgment for the McNeills on liability for years one and two of the grazing rights, because the Bench Trial MOO correctly finds that the Loewens gave or granted the McNeills the right to lease/graze in years one and two; and (ii) the Court does not amend the Final Judgment's award of damages, because the damages awarded to the McNeills are properly calculated, and the

McNeills do not fail to satisfy the duty to mitigate damages.

**ANALYSIS**

Motions to amend or alter a judgment under rule 59(e) of the Federal Rule of Civil Procedure are appropriate where the court has "misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "[T]he decision to grant reconsideration is committed to the sound discretion of the district court; in exercising that discretion, courts consider whether there has been an intervening change in the law, new evidence, or the need to correct clear error or to prevent manifest injustice . . . ." Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 944 (10th Cir. 1995). A motion under rule 59(e) "permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Exxon Shipping Co v. Baker, 554 U.S. 471, 485 n. 5 (2008)(quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, at 127-128 (2d ed.1995)).

On June 1, 2026, the Court issues its Memorandum Opinion and Order following a two-day bench trial held March 16-17, 2026, where the primary issues are: (i) whether the McNeills are entitled to damages for the first two years of grazing rights that the Loewens agreed to give the McNeills under the New Mexico Ranch Purchase Agreement (dated November 11, 2021)(admitted into evidence on March 16, 2026 on Day 1 of the Bench Trial as Plaintiff Tr. Ex. 1)("Purchase Agreement"), because the Loewens do not notify the McNeills that the land is available to graze; (ii) whether the McNeills waive their rights to the third year of grazing rights under the Purchase Agreement, because the McNeills do not accept conditions which the Loewens place on the use of the grazing rights; and (iii) whether the McNeills fail to meet their duty to mitigate damages. See Bench Trial MOO at 1. In the Bench Trial MOO, the Court grants judgment in the Loewens' favor

against the McNeills for years one and two of the grazing rights, and in the McNeills' favor and against the Loewens for year three of the grazing rights, awarding damages in the amount of $289,123.20, and concluding that the McNeills do not fail to meet their duty to mitigate. In the McNeill Motion to Amend, the McNeills challenge the Court's entry of judgment against them for years one and two of grazing rights, and in the Loewen Motion to Amend, the Loewens allege both that the Court calculates the damages incorrectly, and that the McNeills do fail to meet their duty to mitigate.

## I. THE COURT DENIES THE MCNEILL MOTION TO AMEND, BECAUSE THE MCNEILLS DO NOT IDENTIFY AN INSTANCE WHERE THE COURT HAS MISAPPREHENDED THE FACTS, A PARTY'S POSITION, OR THE CONTROLLING LAW.

The McNeills request that the Court alter or amend the Final Judgment under rule 59(e), because the Court makes a factual error in concluding that the Loewens "gave" or "granted" the McNeills the right to lease/graze in years one and two. McNeill Motion to Amend at 1. The McNeills point to the Court's factual findings that the Loewens do not contact the McNeills and offer/inform the McNeills where the land is available for grazing as evidence that the Loewens do not give the McNeills the right to graze in years one and two. The McNeills maintain:

> The Court's conclusion that Defendants' obligation was satisfied by merely maintaining land "ready" for use, while placing the entire burden on Plaintiffs to locate, access, and begin grazing without any input from Defendants, is irreconcilable with the Court's factual determinations, and Defendants' admissions, that Defendants did not contact or inform Plaintiffs where the grazing properties were in either year.

McNeill Motion to Amend at 3. The Court disagrees with the McNeills' argument.

The McNeills misunderstand the Court's ruling in the Bench Trial MOO. The Court decides, in the Bench Trial MOO, as a matter of law, what requirements are placed on each party from the contractual provision in the Purchase Agreement which states that the "Buyer shall give

Seller the right to graze livestock, at no charge to Seller . . . ." Purchase Agreement, ¶ 2, at 1 (dated November 11, 2021)(admitted into evidence on March 16, 2026 on Day 1 of the Bench Trial as Plaintiff Tr. Ex. 1). The Court, interpreting this provision, concludes that "[t]he Purchase Agreement requires that the Loewens 'shall give' the McNeills the right to graze, but this right does not mean that the Loewens are responsible for seeking out the McNeills and bringing their cows to the Loewens' land to graze." MOO ¶ 8, at 17 (quoting Purchase Agreement ¶ 2, at 1). "All that the Purchase Agreement requires from the Loewens is that they maintain the required land, in the required condition, ready for the McNeills to use should the McNeills choose to exercise their grazing rights." MOO ¶ 8, at 17. As a result of this conclusion of law, the Court determines that the Loewens, during the first two years, do not fail to uphold their end of the contractual bargain on the grazing rights, because there is no evidence that they do not have the fields available for grazing should the McNeills indicate their desire to graze.

> The onus is on the McNeills, who have the option to graze their cattle or not, to elect to enforce their grazing rights. In so doing, the McNeills must make reasonable efforts to contact the Loewens to determine where the available land is that the cattle may graze. Failure to make such reasonable efforts constitutes a failure to exercise the right to graze so that the McNeills may not recover on such basis.

MOO ¶ 8, at 17-18.

The McNeills do not offer any argument why this conclusion is a clear error such that the Court must amend the judgment under rule 59(e). The McNeills argue:

> The Court's conclusion that Defendants' obligation was satisfied by merely maintaining land 'ready' for use, while placing the entire burden on Plaintiffs to locate, access, and begin grazing without any input from Defendants, is irreconcilable with the Court's factual determinations, and Defendants' admissions that Defendants did not contact or inform Plaintiffs where the grazing properties were in either year.

McNeill Motion to Amend at 3. The challenged conclusion of law is, however, reconcilable with

the Court's factual findings that the Loewens do not contact or inform the McNeills where the grazing properties are in either year, because the Court interprets the Purchase Agreement to require the McNeills to make reasonable efforts to contact the Loewens to exercise their grazing rights.

The McNeills also point to the Court's conclusion that the Loewens do not give the McNeills the right to graze during the third year of grazing rights as proof that the Court errs in determining that the Loewens give the McNeills the right to graze in years one and two.

> Defendants' obligation necessarily includes an affirmative tender sufficient to make the right real and usable, not merely theoretical. For year three, the Court held Defendants agreed to allow the McNeills to graze on their land, though at unknown locations, pursuant to certain conditions and that Defendants breached the Purchase Agreement by imposing conditions that were inconsistent with giving the right at "no charge," and awarded damages. The same logic applies to years one and two: an uncommunicated, unidentified "availability" of circles, coupled with no notice of where to graze, is not "giving" or "granting" the right.

McNeill Motion to Amend at 4-5. The McNeills' argument misunderstands, however, the Court's conclusion with regards to the third year of grazing rights. The Court does not conclude that the Loewens fail to give the right to graze to the McNeills, because the Loewens do not contact the McNeills to identify the location of the grazing circles for the third year. Instead, the Court concludes that the Loewens do not give the right to graze to the McNeills, because, after the McNeills contact the Loewens and make clear their intention to graze during the third year, the Loewens place conditions on the grazing which are not present in the contract.

> The Court determines that "at no charge to Seller" prevents the Loewens from charging the McNeills for costs associated with grazing. See FOF ¶ 34, at 10. Accordingly, the Court concludes that the Loewens, in placing conditions on the McNeills' grazing rights requiring the McNeills to pay for water distribution, utilities, fencing, and liability insurance, do not give the McNeills the right to graze at no charge as the Purchase Agreement requires.

MOO ¶ 11, at 20. The Court's finding that the Loewens do not give the McNeills the right to graze during the third year of grazing rights is, therefore, not inconsistent with the Court's conclusion that

the Loewens give the McNeills the right to graze during the first two years of grazing rights, and therefore does not counsel a finding of error. The McNeills, it appears, seek merely to relitigate the case's merits. Relitigating the merits is not appropriate on a motion to amend the judgment under rule 59(e). The Court accordingly denies the motion.

## II. THE COURT DENIES THE LOEWEN MOTION TO AMEND, BECAUSE THE LOEWENS DO NOT IDENTIFY AN INSTANCE WHERE THE COURT MISAPPREHENDS THE FACTS, A PARTY'S POSITION, OR THE CONTROLLING LAW.

The Loewens request that the Court alter or amend the Final Judgment under rule 59(e), first because the "Plaintiffs failed to prove damages within a reasonable degree of certainty and the damages awarded for the year three breach are speculative." Loewens' Motion to Amend at 4. While the Loewens do not challenge the formula that the Court uses to calculate damages, the Loewens assert that one of the variables necessary to calculate damages -- the number of head of cattle -- is too speculative to support an award of damages. See Loewen Motion to Amend at 4. Second, the Loewens request that the Court alter the judgment, because the Loewens assert that the Court makes a clear error in finding that the McNeills meet their duty to mitigate damages on the third year, because the McNeills could have accepted the conditions which the Loewens placed on the grazing rights, and then grazed the Loewens land. See Loewen Motion to Amend at 8 ("Specifically, Defendants presented evidence that Plaintiffs could have paid $1,000 per circle and $100 per month per circle, for utility cost, totaling $4,800."). The Court disagrees with both of the Loewens' arguments.

First, the Court does not make an error when it concludes in the MOO that the McNeills establish their damages with reasonable certainty.

> Like the plaintiff's testimony in Barfield regarding his cattle business, McNeill testifies to the number of calves he intends to graze on the Loewens' land, the costs he would incur to care for the calves and pay sales commission, an

> approximate weight gain for the cattle based on weight gain of cattle that the McNeills keep in South Dakota, and the price per pound which the McNeills sell other cattle for in the relevant years.

MOO ¶ 13, at 22 (citing FOF ¶¶ 45-50, at 13-14). The Loewens assert that the McNeills do not establish with reasonable certainty one variable which is required to assess damages -- the number of cattle on the land -- because "Mr. McNeill testified that he set aside 360 head but then later testified that one of the actual circles offered for the 3rd year grazing would only support 1, 10, or was it 50?" Loewen Motion to Amend at 4 (citing Trial Tr. Vol. 1, 109, 130-132). The Court concludes, however, that McNeill's testimony that he intends to place 360 cattle on the Loewens' land as an exercise of his contractual grazing rights is sufficient to establish the amount of cattle that will be on the land such that damages are reasonably certain. See MOO ¶ 36, at 10-11; Day 1 Bench Trial Proceedings Transcript at 42:8-11 (taken March 16, 2026)(Moore, W. McNeill), filed April 16, 2026 (Doc. 116)("Day 1 Tr.")(Q: "[W]ell, for each of the last three years how many cows did you earmark to put on those circles? A: 360; 120 per circle."). The fact that McNeill later testifies that he does not know if the land which the Loewens identify as available for grazing will actually sustain that number of cattle does not change this conclusion.

> Q: When you say it's not acceptable to graze for 165 days, you're making an assumption that you're going to put 360 head on it; right?
> A: That's what I would put on it, correct.
> Q: But that assumption is not in the contract. And it would be acceptable to graze 50 head?
> A: How many?
> Q: Fifty.
> A: No, some of those pictures wouldn't even graze 50.

Day 1 Tr. at 129:21-130:7 (Jenkins, McNeill). McNeill is consistent in his testimony that he intends to place 360 cattle on the Loewens' land. The Purchase Agreement requires that the Loewens give to the McNeills "the right graze livestock, at no charge to Seller, on up to three irrigated circles of what owned by Buyer, or any entity thereof, and planted and maintained by Buyer. Said circles

shall be of a minimum of 120 acres . . . ." Purchase Agreement ¶ 2, at 1. The Purchase Agreement is silent as to the amount of cattle which the land must be able to sustain, and the Court interprets this silence to mean that the Loewens, who must plant and maintain the land, must give the McNeills the right to graze cattle on land which the Loewens plant so as to support an economically reasonable number of cattle. The Court concludes that 360 cattle on 120 acres is an economically reasonable number of cattle, looking to the testimony of Seth Boyd, an experienced rancher, who testifies that he would put at minimum 360 cattle on the grazing land. See Day 1 Tr. at 176:25-177:1 (Boyd)([The Purchase Agreement] says a minimum of 120 [acres]. So I think 360 [cattle] is a minimum. So that's fair."). That the land which the Loewens identify as the land on which they intend to allow the McNeills to graze does not appear capable of supporting 360 head of cattle does not mean that the number of cattle which McNeill intends to put on the Loewens' land is speculative such that it cannot sustain damages. Instead, it merely provides another potential reason for a finding that the Loewens breach their duty under the Purchase Agreement, which the Court does not discuss in the MOO, because the Court already finds that the Loewens breach as a result of the conditions which the Loewens place on the McNeills' exercise of their grazing rights for the third year. See MOO ¶ 11, at 20. There, therefore, is no requirement that the Court make a finding of fact that the land is able to support 360 cattle to use this number in its damages calculation, when the fact that the land would be unable to support that number of cattle is evidence of breach of the Purchase Agreement, and McNeill testifies that he has 360 cattle set aside which he intends to put on the Loewens' land. Accordingly, the Court concludes that the McNeills prove their damages with reasonable certainty, and, in the absence of a showing of error, denies the motion to amend the judgment under rule 59(e) on this basis.

The Court concludes that it also does not make an error in concluding that the Loewens do

not meet their burden of proving the duty to mitigate, and accordingly declining to lower the McNeills' damages because of the duty to mitigate. See MOO ¶ 18, at 27-28. The Loewens argue that the Court commits clear error in concluding that the Loewens do not introduce evidence to successfully establish the affirmative defense of mitigation, because there is both testimony and exhibits at the trial which establish that the McNeills could have "grazed the land and then disputed any obligation to pay Defendants under the contract." Loewens' Motion to Amend at 8. The Court agrees with the Loewens that the testimony at trial establishes that the McNeills could have accepted the conditions which the Loewens place on the grazing rights and then grazed the land, but the Court disagrees that this fact demonstrates that the McNeills do not meet their duty to mitigate.

The duty to mitigate requires only that the "injured party undertake ordinary or reasonable measures to mitigate damages." Lovelace Med. Ctr. v. Mendez, 1991-NMSC-002, 111 N.M. 336, 353, 805 P.2d 603, 621. This requirement does not mean that the parties undertake every feasible measure possible to mitigate damages. The Loewens place numerous conditions on the McNeills before they will allow the McNeills to graze, beyond paying for utilities:

> 1. The grazing start date will be no sooner than November 1, 2024; 2. Your clients will fence the circles with temporary fencing prior to allowing cattle on the property; 3. Your clients will provide proof of ownership or authority to control the cattle; 4. My clients will hire the necessary contractors to provide for water distribution so long as they are paid $1,000 per circle for such accommodation and will have such facilities in place prior to the grazing start date; 5. My clients will not provide any storage facilities for the water and will only provide access to allow a reasonable amount of water to be consumed during the term of the grazing period; 6. Your clients will pay $100 per month, per circle for the associated utilities; 7. Your clients will protect the wells and pivots with temporary fencing on each circle; 8. Your clients will provide liability insurance naming my clients as additional insureds in a commercially reasonable amount no less than $1,000,000; 9. All temporary fencing and cattle will be removed by April 15, 2025; 10. Your clients agree to indemnify my clients for any damages caused to the wells, pivots, and based upon any allegation of a third party claiming any damages caused by the cattle; and 11. Your clients agree that reasonable farming practices do not require more than 1" of irrigation per circle per month.

Letter from Jody Jenkins to Jared Moore Re: Amended Grazing Stipulations (dated October 24, 2024)(admitted into evidence on March 16, 2026 on Day 1 of the Bench Trial as Plaintiff Tr. Ex. 3)("Amended Conditions Letter"). These conditions go beyond merely "paying $4,800 in utility costs." Loewens' Motion to Amend at 7. The conditions also require the McNeills to: (i) "provide liability insurance naming my clients as additional insureds in a commercially reasonable amount no less than $1,000,000"; (ii) "agree to indemnify my clients for any damages caused to the wells, pivots, and based upon any allegation of a third party claiming any damages caused by the cattle"; and (iii) "agree that reasonable farming practices do not require more than 1" of irrigation per circle per month." Amended Conditions Letter at 1. The Court concludes that grazing under these conditions is not an ordinary measure such that the McNeills must accept them and graze to mitigate their damages. The Court determines that these requirements place higher costs on the McNeills than the $4,800.00 utility costs which the Loewens assert. Further, the Court determines that, at minimum, the requirement that the McNeills indemnify the Loewens from any claims for damages from the cattle and the limitation to 1 inch of irrigation per circle per month are unreasonable. There is no evidence in the record that these conditions are industry standard, and the Court finds that requiring the McNeills both to open themselves up to potential liability from grazing and the inability to make sufficient profits from their grazing efforts because the land is not being irrigated sufficiently are unreasonable requirements; the damages from these two conditions are not so easily recouped through a lawsuit after the grazing year as the Loewens suggest.

> Number 10, I've never been asked to indemnify anybody. And that's so open-ended, that would scare me to take on that responsibility. And number 11 is not reasonable. You can't grow wheat, acceptable grazing, by putting an inch a month down and expect to graze cattle from November 1 to April 15.

Day 1 Tr. at 57:4-10 (McNeill). Accordingly, the Court concludes that the McNeills are excused from their failure to mitigate under the demanded eleven conditions, because mitigation under these

conditions require the McNeills to undertake unreasonable measures. It looks like the Loewens went to an attorney to draft the letter, and the lawyer drafted conditions that the Loewens wish were in the Purchase Agreement, but are not. The Loewens cannot say reasonably that the McNeills are not mitigating damages by failing to accept conditions for which they did not bargain. The Court, therefore, does not commit an error in declining to reduce the McNeills' damages for failure to mitigate in the Bench Trial MOO, and, as a result, declines to amend the judgment here on this basis. See Bench Trial MOO ¶ 18, at 27-28.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion to Alter or Amend the Final Judgment, filed July 13, 2026 (Doc. 123)("McNeills' Motion to Amend"), is denied; and (ii) the Defendants' Motion to Amend Judgment Entered on June 15, 2026 [Doc. 122 (Final Judgment)] [Doc. 121 (Opinion)], filed July 13, 2026 (Doc. 124)("Loewens' Motion to Amend"), is denied.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Jason B. Hamm
Jared M. Moore
Hamm Law Group, PLLC
Midland, Texas

*Attorneys for the Plaintiffs/Counter-Defendants*

Jody Jenkins
Jenkins, Wagnon & Young, P.C.
Lubbock, Texas

*Attorneys for the Defendants/Counter-Plaintiffs*